## A08A1508. WILLIAMS v. THE STATE.
(666 SE2d 703)

BLACKBURN, Presiding Judge.

Following a jury trial, Aaron Williams appeals his conviction of five separate crimes: burglary,[1] aggravated stalking,[2] terroristic threats,[3] criminal damage to property,[4] and possession of a knife while making terroristic threats.[5] He argues that (i) the burglary and aggravated stalking crimes should have merged, (ii) the court erred in sentencing when it relied on hearsay evidence and failed to consider probation, (iii) the court erred in finding he did not prove ineffective assistance of counsel, and (iv) he was denied due process by the eight-year delay in the court's conducting a hearing on his motion for new trial. Discerning no error, we affirm.

Construed in favor of the verdict, *Short v. State,*[6] the evidence shows that in December 1998, Williams, who was in his car, began chasing his ex-girlfriend's vehicle when he saw her in her vehicle with a new boyfriend; he then ran his car into the back of his

---

[1] OCGA § 16-7-1 (a).

[2] OCGA § 16-5-91 (a).

[3] OCGA § 16-11-37 (a).

[4] OCGA § 16-7-23 (a) (1).

[5] OCGA § 16-11-106 (b) (1).

[6] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

ex-girlfriend's vehicle. Charged with two counts of reckless conduct and imprisoned pending trial, Williams pled guilty and was given probation with the express condition that he have no contact with nor enter upon the premises of the ex-girlfriend or her boyfriend.

The day he was released from jail and began probation (May 15, 1999), Williams called the ex-girlfriend, who refused him permission to visit her; the next day, he went to the ex-girlfriend's residence where he surveilled her and then approached her door, knocking thereon. The ex-girlfriend immediately called Williams's sister, who instructed the ex-girlfriend to tell Williams to leave. The victim told Williams to leave, who in a loud, upset, and intoxicated manner refused and instead demanded that the victim repay him certain money. When the victim indicated she would pay later, Williams kicked down the victim's locked and barred door, causing the victim to drop the phone and to retreat to her bedroom to procure protection from her boyfriend, who was in that room. The boyfriend met Williams at the bedroom doorway, wrestling with him to prevent his entry. The struggle resulted in the bedroom door being torn off its hinges, whereupon the victim raced around the wrestling men and escaped from the residence, seeking refuge in a neighbor's residence.

In the ensuing rampage, Williams destroyed several items in the victim's residence, smashing a TV and lamps, crushing CDs and a CD player, knocking holes in the wall, and turning over and breaking tables. He grabbed a large butcher knife from the kitchen and went to her car, puncturing three tires and yelling he intended to kill her. Williams escaped before police arrived.

Indicted for burglary (with intent to commit aggravated stalking), aggravated stalking, terroristic threats, criminal damage to property, and possession of a knife during the commission of a felony (making terroristic threats), Williams was found guilty on all counts and sentenced to 45 years, which consisted of the maximum imprisonment on each count, with each to run consecutively. A later judge denied Williams's motion for a new trial (in which Williams asserted ineffective assistance of counsel) but granted his request for resentencing based on some inappropriate comments by the original trial judge. Following a hearing, Williams was resentenced to the same term of imprisonment.

1. Williams first asserts that the trial court erred in not merging the aggravated stalking count into the burglary count, contending that under the "actual evidence" test, the same factual evidence was used to prove both crimes. Williams misapprehends the current law of merger.

In 2006, the Supreme Court of Georgia in *Drinkard v. Walker*[7] eschewed the "actual evidence" test in favor of the "required evidence" test.

> Under the "required evidence" test, . . . the applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. As this court stated [previously], a single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other. The "required evidence" test reflects the statutory language of OCGA § 16-1-6 (1) far more accurately than does the "actual evidence" test. . . .

(Citation, punctuation and footnotes omitted.) Id. at 215. See *Waits v. State*[8] (same conduct established commission of both aggravated battery and cruelty to children; because aggravated battery required proof that victim lost use of a body member, and cruelty to children required proof that the victim was under 18, crimes did not merge).

Based on this test, no merger occurred here. To prove burglary under OCGA § 16-7-1 as alleged in the indictment, the State had to prove that Williams entered the victim's residence without authority and with the intent to commit aggravated stalking. To prove aggravated stalking under OCGA § 16-5-91 as alleged in the indictment, the State had to prove that Williams surveilled and contacted the victim in violation of a condition of probation for the purpose of harassing and intimidating the victim. Thus, the burglary statute required that the State show entry into the residence, which was not required by the aggravated stalking statute; on the other hand, the aggravated stalking statute required that the State prove that Williams actually contacted the victim, which was not required by the burglary statute that only required that Williams have *the intent* of contacting the victim when he entered the residence. See *Childs v. State*[9] ("to complete the crime of burglary, it is not necessary that a defendant actually commit a theft or a felony; it is sufficient if he enters without authority and with the intent to commit a theft or a felony") (punctuation omitted). Accordingly, merger was not appro-

---

[7] *Drinkard v. Walker*, 281 Ga. 211, 214-217 (636 SE2d 530) (2006).

[8] *Waits v. State*, 282 Ga. 1, 4-5 (2) (644 SE2d 127) (2007).

[9] *Childs v. State*, 257 Ga. 243, 251 (12) (357 SE2d 48) (1987).

priate. See *Hardegree v. State*[10] (no merger of burglary (intent to rape) and actual rape); *Palmer v. State*[11] (same).

2. Williams claims the court committed two errors in resentencing him: the court relied on hearsay evidence, and the court refused to consider probation. Both claims are meritless.

(a) *The court did not rely on hearsay evidence.* At the resentencing hearing, the victim was present, but the State did not have her testify because she was emotionally distraught. Rather, the prosecutor informed the court what the victim had told the prosecutor, namely that the 45-year sentence was appropriate and that while in prison, Williams had attempted to harass her by sending mail to her father's address. Cf. *Humphrey v. State*[12] (trial judge may not consider impermissible hearsay in sentencing). However, in announcing the sentence, the court expressly stated that nothing the victim had said impacted on the sentence. Because the law presumes that a trial judge during sentencing "sifts the wheat from the chaff, ignoring illegal evidence and considering only legal evidence," *Haas v. State*,[13] we presume that the trial judge ignored the hearsay evidence here, particularly where he expressly indicated he was not considering same. See id. See also *Wright v. State*.[14]

(b) *The court considered probation.* Williams bears the burden of making an affirmative showing that the court refused to consider probation. See *Smith v. State*[15] ("[i]n the absence of any affirmative showing to the contrary, the court is presumed to have exercised its discretion in imposing sentence" and to have considered probation) (punctuation omitted). Yet at no point during resentencing did the court indicate that it did *not* consider probation as a possible punishment. Rather, as the only evidence that the court did not consider probation, Williams points to the court's statement that despite Williams's improved behavior in prison while he was on medication and not ingesting alcohol, the court could not "help" him. This was hardly a statement that the court was refusing to consider probation as a part of the sentence. Accordingly, we hold Williams has not made the necessary showing.

3. Williams contends that he received ineffective assistance of counsel. In order to prevail on this claim, he had to show to the court below both that his counsel's performance was deficient and that the

---

[10] *Hardegree v. State*, 230 Ga. App. 111, 113-114 (5) (495 SE2d 347) (1998).

[11] *Palmer v. State*, 174 Ga. App. 720 (331 SE2d 77) (1985).

[12] *Humphrey v. State*, 257 Ga. App. 312, 313-314 (1) (571 SE2d 187) (2002).

[13] *Haas v. State*, 146 Ga. App. 729, 732-733 (6) (247 SE2d 507) (1978).

[14] *Wright v. State*, 265 Ga. App. 188, 190 (2) (593 SE2d 391) (2004).

[15] *Smith v. State*, 269 Ga. App. 506, 507 (2) (604 SE2d 587) (2004).

deficiency prejudiced his defense. *Allen v. State*.[16] See *Strickland v. Washington*.[17] Williams had to overcome "the strong presumption that counsel's performance fell within a broad range of reasonable professional conduct." *Brewer v. State*.[18] Prejudice must be established by showing that "a reasonable probability exists that the result of the trial would have been different but for the deficiency." *Allen*, supra, 280 Ga. App. at 665 (2). We will not reverse a trial court's findings regarding either the deficiency or prejudice prong of this test unless the findings are clearly erroneous. *Johnson v. State*.[19]

(a) *Trial counsel did not ask for a Jackson-Denno hearing.* Williams first asserts that his trial counsel was deficient in that he did not request a *Jackson-Denno* hearing regarding certain testimony Williams gave at a probation revocation hearing. We discern neither deficient performance nor prejudice.

During trial, the State repeatedly asked witnesses regarding their recollection of statements Williams made when he testified at an untranscribed hearing, held soon after the May 1999 break-in of the victim's residence. This hearing was to determine whether to revoke Williams's probation for having violated the probation condition of not contacting the ex-girlfriend. The trial witnesses confirmed that at that revocation hearing, Williams admitted to breaking into the victim's residence, to contacting her in violation of the probation condition, to destroying her personal property, and to using a knife to slash her tires, but that he denied making any threats against the victim. Williams now complains that his trial counsel should have sought to exclude this testimony by asking for a *Jackson-Denno* hearing to determine if the statements were voluntary.

However, a review of the trial transcript, including the opening statements and closing arguments, shows that the entire strategy of defense counsel was not to deny the basics of the incident (which was witnessed by several individuals) but was to portray Williams as a cooperative, honest, forthcoming person who had sincerely believed that the victim — whom he never threatened but rather loved — wanted him to visit and that her decision to reject him caused him to react poorly by breaking down the door and venting his anger on inanimate objects, which actions he had candidly admitted to police, to the judge at the probation revocation hearing, and indeed to a police officer at a break during the trial. The basis for Williams's

---

[16] *Allen v. State*, 280 Ga. App. 663, 664 (2) (634 SE2d 831) (2006).

[17] *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984).

[18] *Brewer v. State*, 280 Ga. 18, 20 (3) (622 SE2d 348) (2005).

[19] *Johnson v. State*, 280 Ga. App. 341, 343 (3) (634 SE2d 134) (2006).

198

belief was (as shown through evidence elicited by trial counsel at trial) that the victim was willing to reconcile with him, as manifested by his loaning of money to her while in prison, her talking with him about reconciliation on the phone during the month before his release (to the tune of $385 in phone bills), her leaving her new boyfriend while Williams was in jail, and her willingly giving him her residential address. Trial counsel argued to the jury that Williams never intended to harm the victim but came to her residence with her consent and that at most he was guilty of damaging her property and using a knife to do so — but that he committed no burglary or aggravated stalking and that he certainly made no terroristic threats.

Based on this overarching strategy, which permeated all defense cross-examinations and arguments to the jury, attempts to exclude the statements made during the probation revocation hearing would have been counterproductive, for those statements reflected Williams's willingness to take responsibility for his actions and to be forthright and honest, and confirmed his position that he never threatened nor intended to harm the victim. As the record reflects this clearly was a matter of strategy, which we cannot say was patently unreasonable, we affirm the finding that no deficiency was shown. See *Robinson v. State*[20] ("[a]s a general rule, matters of reasonable trial tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel") (punctuation omitted). See also *Abernathy v. State*[21] ("[t]rial tactics and strategy, however mistaken they may appear with hindsight, are almost never adequate grounds for finding trial counsel ineffective unless they are so patently unreasonable that no competent attorney would have chosen them") (punctuation omitted).

Moreover, even if the failure to exclude the probation hearing statements were deficient, we affirm the trial court's finding that such was hardly prejudicial. Williams had made similar statements to the investigating officer and indeed reiterated these statements during a break in the trial to yet another law enforcement officer (in the presence of the prosecutor and his trial counsel).

(b) *Trial counsel failed to properly impeach the victim's daughter.* During the cross-examination of the victim's daughter (who had been present in the residence when Williams broke down the door), trial counsel withdrew a question regarding certain statements the daughter allegedly made during the probation revocation hearing, which statements may have indicated that she did not hear the threats to kill her mother. Williams contends that such constituted

---

[20] *Robinson v. State*, 278 Ga. 31, 37 (3) (d) (597 SE2d 386) (2004).
[21] *Abernathy v. State*, 278 Ga. App. 574, 587 (3) (b) (v) (630 SE2d 421) (2006).

deficient performance. However, not only did Williams fail at the motion-for-new-trial hearing to present evidence that the daughter in fact made such statements at the revocation hearing, but "the scope of cross-examination is grounded in trial tactics and strategy, and will rarely constitute ineffective assistance of counsel." (Punctuation omitted.) *Cooper v. State*.[22] See *Skaggs-Ferrell v. State*[23] (" '[t]he manner in which an attorney attacks the credibility of a witness falls within the ambit of trial tactics' ").

(c) *Trial counsel did not call Williams's sisters as witnesses.* Williams complains that his trial counsel did not call his two sisters as witnesses. One sister stayed on the phone after the victim dropped it and could have testified that she heard no threats over the phone as it lay on the ground; the other sister claims that she visited the victim's residence shortly after the incident and that the destruction to property at the residence was not as extensive as portrayed by other witnesses. Considering that the testimony as to what was heard was over a phone lying on the ground that was not near Williams when he made his threats while slashing the tires outside, and considering that at no point did Williams contest the level of destruction to personal property at the residence, testimony from Williams's biased sisters would appear to have been outweighed by the benefit (giving the final word in closing argument) that trial counsel would have foregone had he put on witnesses. See *Cooper*, supra, 281 Ga. at 762 (4) (a) ("[a]t the time of appellant's trial, it was a well-recognized trial tactic for defense counsel to decline to present evidence so as to preserve the final word in closing argument. Counsel's decision not to call the two [ ]witnesses was reasonable under the circumstances") (citation and footnote omitted). We discern no error.

(d) *Trial counsel stipulated to the length of the knife and did not focus on the number of tires slashed.* Finally, Williams claims that his trial counsel acted deficiently when he stipulated to the length of the knife used to slash the tires (as exceeding three and one-half inches, see OCGA § 16-11-106 (b)), and did not focus on the difference between the victim's testimony that all her tires were slashed and the evidence from others showing that only three were slashed. However, a picture of the knife showed that the weapon was clearly longer than three and one-half inches. To avoid having the court allow the State to reopen its evidence to prove the length of the knife again, Williams's trial counsel stipulated that it exceeded three and one-half inches. We discern no error in the court's finding that this did not constitute ineffective assistance.

[22] *Cooper v. State*, 281 Ga. 760, 762 (4) (a) (642 SE2d 817) (2007).
[23] *Skaggs-Ferrell v. State*, 287 Ga. App. 872, 879 (5) (652 SE2d 891) (2007).

Nor do we discern any error in the court's finding of no ineffective assistance regarding trial counsel's failure to focus on the difference in the testimony between three tires being slashed versus four tires being slashed. This was a minor discrepancy that was not material to the case.

For these reasons, we hold that the trial court did not clearly err in its findings underlying its decision that Williams failed to carry his burden of proving ineffective assistance of counsel.

4. Williams alleges that he was denied due process when the court failed to hear his motion for new trial until eight years after the jury trial.

> The balancing test adopted for speedy trial violations in *Barker v. Wingo*[24] should be applied to situations in which a defendant claims that a delay in the appellate process is violative of due process of law. The four facts enunciated in *Barker* are the length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

(Punctuation omitted.) *Cail v. State*.[25] The determination of this latter issue depends on whether Williams has shown actual prejudice resulting from the delay. *Chatman v. Mancill*.[26] This includes whether the delay prejudiced the ability of Williams to assert his arguments on appeal and, should it be established that the appeal was prejudiced, whether the delay prejudiced his defenses in the event of retrial or resentencing. Id. at 260 (2) (e).

As held in *Cail*, pretermitting whether the record establishes the first three *Barker* factors, we hold that Williams

> cannot show that he was prejudiced by the delay, without which prejudice his claim of due process violations arising from an undue delay in his appeal must fail. As discussed above, the enumerations [Williams] has raised on appeal are without merit; there can therefore be no prejudice in delaying a meritless appeal.

Supra, 287 Ga. App. at 554 (5). His argument that because of the delay, his trial counsel could not be found to testify at the motion-for-new-trial hearing, has no basis in the evidentiary record. Statements in an appellate brief (as to the difficulty of locating trial counsel), when unsupported by any citations to evidence in the

---

[24] *Barker v. Wingo*, 407 U. S. 514 (92 SC 2182, 33 LE2d 101) (1972).

[25] *Cail v. State*, 287 Ga. App. 547, 553 (5) (652 SE2d 190) (2007).

[26] *Chatman v. Mancill*, 280 Ga. 253, 256 (2) (626 SE2d 102) (2006).

record, cannot be considered by this Court. See *Flanigan v. State*[27] ("unsworn, self-serving statements in . . . appellate brief are not evidence and cannot be considered"). We discern no error.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JULY 18, 2008 —
RECONSIDERATION DENIED AUGUST 1, 2008 —

*Fulcher & Hagler, Amy R. Snell*, for appellant.

*Daniel J. Craig, District Attorney, John M. Markwalter, Charles R. Sheppard, Assistant District Attorneys*, for appellee.

---

[27] *Flanigan v. State*, 238 Ga. App. 296 (1) (517 SE2d 569) (1999).