## A08A1562. SIMPSON v. THE STATE.

(668 SE2d 451)

ELLINGTON, Judge.

A Cobb County jury found Michael Simpson guilty beyond a reasonable doubt of armed robbery, OCGA § 16-8-41 (a); false imprisonment, OCGA § 16-5-41 (a); theft by receiving stolen property, OCGA § 16-8-7 (a); possession of a firearm during the commission of a crime, OCGA § 16-11-106 (b); and two misdemeanor traffic violations.[1] He appeals from the denial of his motion for new trial, contending that the evidence was insufficient to support his convictions; that the trial court improperly admitted his custodial statement, his co-defendant's custodial statement, and other evidence; and that the court erred in failing to merge his false imprisonment conviction with his armed robbery conviction. Finding no reversible error, we affirm.

1. Simpson contends that the evidence was insufficient to sustain his convictions for theft by receiving stolen property[2] and possession of a firearm during the commission of a crime.[3] He argues that there was no evidence that he knew the weapon used in the armed robbery was stolen or that he was a party to the crimes of theft by receiving or possession of a firearm.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though

---

[1] The jury also found Simpson guilty of two counts of aggravated assault, OCGA § 16-5-21 (a). The court merged the convictions into the armed robbery conviction.

[2] Under OCGA § 16-8-7 (a), "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner."

[3] Under OCGA § 16-11-106 (b) (1), it is a crime for any person to "have on or within arm's reach of his or her person a firearm . . . during the commission of, or the attempt to commit . . . [a]ny [felony offense] against or involving the person of another."

contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). The standard of *Jackson v. Virginia* is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged. *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

Viewed in this light, the evidence showed that, on September 23, 2006, Simpson and at least three friends decided to go to a club. Simpson borrowed his father's Jeep Cherokee and drove the men to a Cobb County apartment complex so that one of the men could stop and get money from an acquaintance. While driving there, one of the men showed a .357 handgun to the others. The men tried to load some .44 rounds in the handgun, but they did not fit.

When the men got out of the car at the apartments, Simpson asked them whether they had the handgun with them. They saw a man standing outside an apartment, talking on a cell phone. They approached the man from behind, grabbed his arms, and pulled him to a darker area against a van. While one of the assailants pointed a handgun to the victim's neck, Simpson and another assailant held onto the victim and searched his pockets. The assailants took the victim's cell phone and some cash. The victim's friends looked out an apartment window, saw that he was being robbed, and started to chase the assailants, and the assailants ran in different directions. While running, one of the assailants dropped the handgun. Two of the assailants got into the Jeep Cherokee and drove around the apartments, eventually picking up Simpson and another assailant.

The victim and his friends called 911, and police officers arriving at the scene observed a Jeep Cherokee stopped in an awkward position at the entrance of an adjacent apartment complex. The driver of the Jeep then drove down the street without the car's headlights on. The officers conducted a traffic stop and detained the four men inside the car. At the time of the stop, Simpson was driving the car, and his clothing matched the description of one of the assailants that had been given by the victim. Officers brought the victim and one of his friends to the scene of the stop, and the victim identified Simpson as the man who held his arm and searched his pockets. Meanwhile, while searching the area around the attack, police officers found the handgun used by the assailants. The owner of the handgun testified that someone had stolen it a few days before the armed robbery from a house in the same neighborhood where one of the assailants lived.

The State charged the men with armed robbery, two counts of aggravated assault (with intent to rob and with a deadly weapon),

false imprisonment, theft by receiving stolen property (the handgun), and possession of a firearm during the commission of a crime. They also charged Simpson with two traffic violations. Two of the assailants pleaded guilty prior to trial, and they testified at the trial of Simpson and a co-defendant, Rashun Elamin. The State argued to the jury that Simpson was guilty of the charged offenses as either an actual participant or as a party to the crimes.

Under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." Under OCGA § 16-2-20 (b) a person is "concerned in the commission of a crime" if he or she:

(1) Directly commits the crime;

(2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity;

(3) Intentionally aids or abets in the commission of the crime; or

(4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

If someone other than the defendant was the actual perpetrator of the crime, the defendant's mere presence at the scene of the crime is not sufficient evidence to establish that the defendant was a party to the crime. *Pruitt v. State*, 282 Ga. 30, 32 (1) (644 SE2d 837) (2007). Instead, it is necessary to prove that the defendant shared a common criminal intent with the actual perpetrator; such intent may be demonstrated by showing the defendant's conduct before, during, and after the crime. Id.

We find that, when viewed in favor of the jury's verdict, the evidence of Simpson's conduct before, during and after the crimes was sufficient for a rational factfinder to conclude that Simpson was guilty beyond a reasonable doubt as a party to the crimes of theft by receiving stolen property and possession of a firearm during the commission of a crime.

2. Simpson contends that the trial court erred in admitting his custodial statement, arguing that it was not voluntary because it was induced by the officer's promise that he would get a "favor" if he cooperated with the police. We disagree.

Under Georgia law, only voluntary incriminating statements are admissible against the accused at trial. OCGA § 24-3-50. When not made freely and voluntarily, a confession is presumed to be legally false and cannot be the underlying basis of a conviction. To make a confession admissible, it must have been made voluntarily, i.e., without being induced by another by the slightest hope of benefit or remotest fear of injury. . . . The State bears the burden of demonstrating the voluntariness of a confession by a preponderance of the evidence.

(Citations and punctuation omitted.) *State v. Ray*, 272 Ga. 450 (2) (531 SE2d 705) (2000). "Unless clearly erroneous, a trial court's factual and credibility determinations related to the admissibility of a confession will be upheld on appeal." (Citation and punctuation omitted.) *Swain v. State*, 285 Ga. App. 550, 551 (647 SE2d 88) (2007).

Pretermitting whether Simpson's statement was a confession to the crimes or simply an incriminating statement,[4] the record shows the following. During the *Jackson-Denno*[5] hearing, the State played an audiotape of Simpson's interview.[6] Other than that evidence, the only person who testified during the hearing was the officer who interviewed Simpson. He testified that Simpson, who was 15 years old, said that he wanted his father to be present during the interview, so the officer postponed the interview until Simpson's father arrived. Both Simpson and his father signed the waiver of rights form.

According to the *Jackson-Denno* hearing transcript, it appears that, during Simpson's interview, the officer told Simpson that he had already interviewed the other men involved in the robbery. The officer said that one of the men had told him the truth but the other two did not, so they would get no "favors" from him. When asked about this statement during the hearing, the officer denied that he

---

[4] See *Vergara v. State*, 283 Ga. 175, 177 (1) (657 SE2d 863) (2008) (rejecting the State's argument that the voluntariness requirements of OCGA § 24-3-50 did not apply to the defendant's statements to law enforcement because they constituted incriminating statements rather than a confession, and noting that "[i]t has long been the law in this State that the rule as to the admissibility of an incriminatory statement is the same as that applied to a confession") (citations omitted).

[5] *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964).

[6] A transcript of Simpson's audiotaped statement is not in the record on appeal. Instead, the record shows that, during the *Jackson-Denno* hearing, the officer who interviewed Simpson paraphrased the statement, testifying that Simpson admitted to the following: he drove the men to the apartment complex in his father's Jeep to see some girls; he saw one of the men give a handgun to another man as they got out of the car; he did not conspire to rob anyone or know that the others were planning a robbery; he was at the scene of the robbery but did not touch the victim, take any money, or otherwise participate in the robbery; he ran back to the Jeep after the robbery; and he drove away from the apartments to the area where police officers stopped the car.

was telling Simpson that, if Simpson told him the truth about the robbery, he (Simpson) would get a favor. The officer testified that, instead, he was telling Simpson that the other men would no longer have the chance to talk to him and "come clean" because they had lied to him and "wasted [his] time." Following this testimony, defense counsel did not cross-examine the officer about the "favors" reference, and counsel acknowledged that the court had "addressed the matter."

The trial court ultimately found that the officer's reference to "favors" was not an offer of an improper favor to Simpson, nor was there evidence of any threats. It concluded that Simpson freely and voluntarily gave his custodial statement and admitted it as evidence against Simpson.[7]

As this Court has previously held, "[t]he promise of a benefit that will render a confession involuntary under OCGA § 24-3-50 must relate to the charge or sentence facing the suspect. The phrase 'hope of benefit' generally means the reward of a lighter sentence." (Citation and punctuation omitted.) *Jones v. State*, 270 Ga. App. 233, 237 (1) (b) (606 SE2d 288) (2004) (a statement by officers that they would note the defendant's cooperation and his efforts to straighten his life out was not an improper promise of a benefit that rendered defendant's confession inadmissible under OCGA § 24-3-50). See *Porter v. State*, 264 Ga. App. 526, 531 (3) (591 SE2d 436) (2003) (an offer by officers to try to "help" the defendant if he told the truth was not an improper promise of a benefit that rendered defendant's confession inadmissible under OCGA § 24-3-50). Having reviewed the record, we find that it supports a conclusion that the officer's reference to "favors" did not suggest that Simpson might receive a lighter sentence or otherwise render Simpson's statement inadmissible.

3. Simpson contends that the court should not have admitted his statement at trial because he did not waive his constitutional right to counsel during questioning by the police officer. He argues that the officer should have stopped questioning him when his father asserted his (Simpson's) right to an attorney.[8] As noted above, however,

---

[7] Notably, the State did not play the tape of the interview for the jury. Instead, the officer testified that Simpson only admitted that he drove his friends to the apartment complex, that he was present during the armed robbery but did not participate, and that he was driving the Jeep away from the apartments when the police officers stopped the car.

[8] Although this argument raises the issue of whether a juvenile suspect's parents can, in fact, assert the juvenile's rights on his or her behalf or whether the juvenile must personally assert them, it is unnecessary for us to resolve this issue given the facts in this case, as shown below. See *State v. Rodriguez*, 274 Ga. 728, 730 (559 SE2d 435) (2002) (noting that the juvenile defendant "did not understand that he had personal responsibility for deciding whether he should speak to police and could not rely on his mother to invoke or waive his rights").

both Simpson and his father signed a waiver of rights form, and it is undisputed that Simpson never requested counsel during his interview. The officer testified that, during the interview, Simpson's father was very emotional and was "thinking aloud" while he, his wife and Simpson discussed whether Simpson needed an attorney. Neither Simpson nor his father testified or presented any evidence that showed that they told the officer that they wanted to speak to an attorney or that otherwise conflicted with the officer's testimony.

The Supreme Court of the United States has specifically addressed the issues of what a defendant must do to assert his or her right to counsel during a custodial interrogation and, when faced with such a request, what are the obligations of the interrogating officers.

> A suspect who knowingly and voluntarily waives his right to counsel after having that right explained to him has indicated his willingness to deal with the police unassisted. Although [the United States Supreme Court's decision in *Edwards v. Arizona*[9]] provides an additional protection — if a suspect subsequently requests an attorney, questioning must cease — it is one that must be affirmatively invoked by the suspect.

*Davis v. United States*, 512 U. S. 452, 460-461 (II) (114 SC 2350, 129 LE2d 362) (1994). In order to affirmatively invoke this right,

> the suspect must unambiguously request counsel. . . . [A] statement either is such an assertion of the right to counsel or it is not. Although a suspect need not speak with the discrimination of an Oxford don, he must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.

(Citations and punctuation omitted.) Id. at 459 (II). Thus,

> after a knowing and voluntary waiver of the *Miranda* rights, law enforcement officers may continue questioning until and unless the suspect clearly requests an attorney. . . . If the suspect's statement is not an unambiguous or unequivocal

---

[9] *Edwards v. Arizona*, 451 U. S. 477, 481-486 (II) (101 SC 1880, 68 LE2d 378) (1981).

request for counsel, the officers have no obligation to stop questioning him.[10]

Id. at 461-462 (II). See also *Perez v. State*, 283 Ga. 196, 197-201 (657 SE2d 846) (2008) (ruling that, pursuant to *Davis*, the defendant's custodial statement was admissible because his alleged assertion of his Fifth Amendment right to remain silent was ambiguous and the interrogating officer had no obligation to clarify his intent); *Brooks v. State*, 271 Ga. 698, 699 (2) (a) (523 SE2d 866) (1999) ("Based on our review of the videotaped statement, we find no merit in appellant's argument that the tape should have been excluded because appellant had invoked her right to counsel. The comments on which appellant relies, when viewed in context, were not clear invocations of the right to counsel and thus the officers had no obligation to cease questioning her immediately.") (citation omitted).

In this case, neither Simpson nor his father clearly and unequivocally asserted Simpson's right to counsel during the interrogation. Thus, the officer was under no obligation to cease the interrogation, and the trial court did not err in admitting Simpson's statement at trial. *Perez v. State*, 283 Ga. at 197-201; *Brooks v. State*, 271 Ga. at 699 (2) (a).

4. Simpson argues that the court improperly admitted the custodial statement of his co-defendant, Rashun Elamin, at trial in violation of his constitutional right of confrontation. According to Simpson, Elamin's statement implicated him in the charged offenses. See *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968).

The record shows, however, that Simpson did not object to the admission of Elamin's statement on this basis before or during trial. This Court has previously held that the failure to raise a *Bruton* objection before or during trial waives consideration of the issue on appeal. *Mason v. State*, 262 Ga. App. 383, 384 (2) (585 SE2d 673) (2003); *Thompson v. State*, 214 Ga. App. 889 (1) (449 SE2d 364) (1994).

Even if Simpson had objected to the admission of Elamin's custodial statement on the basis of *Bruton* at trial, though, any error

---

[10] The Supreme Court also addressed whether the officer had an obligation to clarify the suspect's request before proceeding with the interview, stating that

> when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney. . . . Clarifying questions help protect the rights of the suspect by ensuring that he gets an attorney if he wants one, and will minimize the chance of a confession being suppressed due to subsequent judicial second-guessing as to the meaning of the suspect's statement regarding counsel. *But we decline to adopt a rule requiring officers to ask clarifying questions.*

(Emphasis supplied.) *Davis v. United States*, 512 U. S. at 461 (II).

was harmless beyond a reasonable doubt.

> Where overwhelming evidence of a defendant's guilt exists apart from the statement of the co-defendant, then any violation of *Bruton* is harmless beyond a reasonable doubt. . . . [In this case, any] incriminating information contained in [Elamin's] statement was merely cumulative of properly admitted testimony. Consequently, even assuming that [Elamin's] statement was erroneously admitted, [Simpson] cannot show that he was harmed by its admission.

(Citations, punctuation and footnotes omitted.) *Polite v. State*, 273 Ga. App. 235, 238-239 (3) (614 SE2d 849) (2005). Thus, there was no reversible error.

5. Simpson contends that the court erred in allowing the State to present evidence about gang activity, because the evidence put his character in issue. The record shows that Simpson's counsel asked the court to prohibit the State from questioning the police officers about the meanings of certain gang paraphernalia and about whether Simpson admitted during his custodial interview to being involved in a gang on the night of the armed robbery. The court disallowed the testimony, and the State did not question the officers on these issues or present any gang-related evidence arising from Simpson's custodial interview.

Later, however, while questioning one of the assailants who had pled guilty, the State elicited testimony that the assailant was involved in a gang and that Simpson had told him that he (Simpson) belonged to a different gang. Simpson's counsel did not object to this testimony, and counsel cross-examined the assailant about his gang, his rank in the gang, their colors and signs, etc. On re-direct, the State elicited further testimony by the assailant about his gang experiences and his knowledge of Simpson's gang ties, again without objection.

Because Simpson failed to preserve an objection at trial to the testimony of his fellow assailant on this issue, he waived his right to complain on appeal about the admission of this testimony. *Jackson v. State*, 284 Ga. App. 619, 626-627 (9) (644 SE2d 491) (2007); *Eason v. State*, 283 Ga. App. 574, 576 (2) (b) (642 SE2d 207) (2007).

6. Simpson argues that the court erred in failing to merge his conviction for false imprisonment with his conviction for armed robbery, contending that the false imprisonment was included in the armed robbery as a matter of fact. We disagree.

> Georgia's statutory bar to successive prosecutions and multiple convictions for the same conduct, OCGA § 16-1-7,

is more expansive than the constitutional proscription of double jeopardy. OCGA § 16-1-7 (a) sets forth the substantive bar of double jeopardy by providing that an accused may be *prosecuted* for each crime that arises from the accused's conduct, but an accused may not be *convicted* of more than one crime, if one crime is included in the other. Thus, Georgia law bars conviction and punishment of all crimes which arise from the same criminal conduct and are as a matter of law or a matter of fact included in the major crime for which the defendant has been convicted.

(Citations and punctuation omitted; emphasis in original.) *Curtis v. State*, 275 Ga. 576, 577 (1) (571 SE2d 376) (2002). In determining whether there are two separate offenses or one crime is included in the other, Georgia's courts apply the "required evidence" test. *Williams v. State*, 293 Ga. App. 193, 194 (1) (666 SE2d 703) (2008).

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the ["required evidence" test] is whether each provision requires proof of a fact which the other does not. As [the Supreme Court of Georgia] stated previously, a single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

(Citation and punctuation omitted.) Id. See also *Drinkard v. Walker*, 281 Ga. 211, 214-217 (636 SE2d 530) (2006) (adopting the "required evidence" test for determining when one crime is included in another under OCGA § 16-1-6 (1), and overruling cases which are inconsistent with that test).

Under OCGA § 16-5-41 (a), a person commits the offense of false imprisonment when, "in violation of the personal liberty of another, he [or she] arrests, confines, or detains such person without legal authority." In contrast, under OCGA § 16-8-41 (a), a person commits the offense of armed robbery when, "with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon."[11]

Thus, a plain reading of the statutes shows that the offense of false imprisonment requires proof of at least one additional fact which the offense of armed robbery does not. Consequently, under

---

[11] The indictment charged Simpson and the other assailants with committing armed robbery through the use of a handgun.

the "required evidence" test, the false imprisonment conviction does not merge into the armed robbery conviction. *Drinkard v. Walker*, 281 Ga. at 214-217; *Williams v. State*, 293 Ga. App. at 194 (1).
 *Judgment affirmed. Blackburn, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 18, 2008 —
RECONSIDERATION DENIED OCTOBER 1, 2008 — 

*Barry Staples*, for appellant.
*Patrick H. Head, District Attorney, Amelia G. Pray, Assistant District Attorney*, for appellee.