A09A0610. YATES v. THE STATE.
(681 SE2d 190)

ADAMS, Judge.

Following the August 7, 2003 bench trial, Bryan Yates was convicted on counts of burglary, armed robbery, and aggravated assault. He appeals his conviction and sentence and the denial of his motion for new trial. He contends that the evidence was insufficient, that two of the counts should have been merged for sentencing, that several errors occurred in connection with the testimony of a co-defendant, that the prosecutor engaged in misconduct, and that his counsel was ineffective.

1. Construed in favor of the verdict, the evidence shows that on the morning of June 26, 2002, three men (one of whom was brandish-

---

YALE LAW LIBRARY

ing a chrome-colored gun) pushed their way into Curtis Isaac's home and demanded money. Although there was some evidence that, initially, only two men entered, Curtis testified unequivocally that three men came in. Curtis fought with the gunman. In the struggle the gun went off, and the bullet struck one of the assailants. The injured assailant was Paul Burch, and he would eventually die from his wounds. Curtis continued to struggle with the second man, and that man called for help. The third man, who was behind the victim, said okay, and the struggle continued. At some point, Curtis was pistol-whipped in the head once and struck in the head a second time with a hard object. The third man called out "it's Black, man, he's shot, he's shot." Someone also grabbed about $150 from Curtis's shirt pocket during the struggle. Eventually, the second man pulled away and shot at Curtis twice, hitting him in the stomach with one shot. Curtis went to get his own gun, and the gunman and the third man headed for the door after unsuccessfully trying to take Burch with them. Curtis fired at the two men then watched as Burch managed to stagger out the door on his own and fall down in the yard. Curtis could not identify any of the men at trial.

Yates, age 21, testified in his own defense. In his testimony and in a voluntary statement to police, Yates admitted that he was one of the three men in Curtis's house that morning and that he was involved in a struggle with the victim. But he asserted that he had only been getting a ride to work from Burch and Johnny Isaac (no relation to the victim, apparently) and that he protested to the other two men by saying "I don't want to be involved in this. Take me to work." He testified that he was not the gunman and that he went into the house only after the shooting began in an attempt to get his friends out. Nevertheless, he admitted that the three men circled the house twice before stopping near Curtis's house, that he saw Johnny with a chrome gun and Burch with another gun as they exited the car and headed toward Curtis's house, and that he heard Johnny say "let's do this" before they started. And, even in his own story, he was in a position to see directly in the house at the time of the altercation; in fact he testified that he was already on the porch of Curtis's house when he heard one of his friends call for help. He admitted fighting with Curtis and that at one point he pushed a gun out of Curtis's reach. He also admitted driving Burch's car away from the scene and admitted that Johnny jumped in with him carrying both guns right after firing a couple more shots at Curtis.

Yates testified that after the incident he went home, told his mother what had happened, and was at work that morning by 9:30 a.m. but left shortly thereafter. He attempted to call a detective that morning, and around noon, he called Officer Hentz and told him what had happened and his location. After turning himself in, he was

questioned and later arrested. At the time of his arrest, he did not have money or weapons on his person.

Although Yates claims that his involvement was limited to trying to rescue his friends, there was evidence that he was personally involved in the entire episode. It was up to the trier of fact to determine what happened. Furthermore, under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." See also OCGA § 16-2-20 (b). Furthermore, "criminal intent may be inferred from conduct before, during, and after the commission of the crime." (Citation omitted.) *Sands v. State*, 262 Ga. 367, 368 (2) (418 SE2d 55) (1992). Based on the victim's testimony and admissions by Yates, there was sufficient evidence to convict Yates of being a party to the crimes of burglary, armed robbery, and aggravated assault. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Yates contends he was denied his right to confront co-indictee Johnny Isaac, whose written statement was allowed into evidence. See *Crawford v. Washington*, 541 U. S. 36, 68-69 (V) (C) (124 SC 1354, 158 LE2d 177) (2004).[1] He also contends admission of the same information constituted a *Bruton* violation in that the statement of a nontestifying co-defendant, standing alone, inculpated him. See *Moss v. State*, 275 Ga. 96, 97-99 (2) (561 SE2d 382) (2002); *Daniel v. State*, 285 Ga. 406, 408 (3) (b) (677 SE2d 120) (2009). But Yates's counsel stipulated to the admission of the statement and therefore any error was waived or induced. See *Walton v. State*, 278 Ga. 432, 434 (1) (603 SE2d 263) (2004) (protection of Sixth Amendment right to confrontation may be waived); *Simpson v. State*, 293 Ga. App. 760, 766 (4) (668 SE2d 451) (2008) ("failure to raise a *Bruton* objection before or during trial waives consideration of the issue on appeal") (citations omitted); *Simms v. State*, 223 Ga. App. 330, 332 (1) (477 SE2d 628) (1996) (induced error).

More specifically, the parties appear to have thought that Johnny Isaac would be present to testify. But on the morning of trial, the court learned that Johnny, who had already been sentenced for his role, had been transferred to another county and that he was not under subpoena. The prosecutor stated that he was not aware that Johnny was being transferred. Although the court acknowledged that Yates's counsel had requested that the court have Johnny

---

[1] *Crawford v. Washington* was decided after Yates's conviction and sentence were entered. The Supreme Court of Georgia has held that, "to the extent that *Crawford* enunciated a new rule for the conduct of criminal prosecutions, it applies retroactively to all cases pending on direct review or not yet final. [Cit.]" *Gay v. State*, 279 Ga. 180, 182 (2), n. 2 (611 SE2d 31) (2005). See also *Soto v. State*, 285 Ga. 367 (677 SE2d 95) (2009).

present, because the case was specially set, the court stated that Yates was not entitled to a continuance without a subpoena. Yates's counsel again asked the court if Johnny could be brought to the trial, and the court sent the deputy to see if Johnny could be brought back. The court asked Yates's attorney, whether, if Johnny could not be returned, he would like to proceed anyway. Counsel responded, "yes." Thereafter, Curtis testified. Then, during the investigating officer's testimony, Yates's counsel attempted to introduce Johnny Isaac's *Mirandized* statement; the court sustained the State's objection.

The court then learned that Johnny had become a State prisoner and that a special court order would be required to obtain his presence. And the court announced that the State and the defendant had agreed to stipulate to the introduction of Johnny Isaac's statement along with a statement from the district attorney's office that Johnny would not talk to them without a deal of some sort. Because Yates stipulated to the introduction of Johnny's statement, he cannot now complain.

3. Yates contends the court erred by failing to merge for purposes of sentencing the aggravated assault and/or the burglary conviction with the armed robbery conviction. Yates was charged with armed robbery in that he took currency from Curtis by use of a firearm. He was charged with aggravated assault in that he made an assault on Curtis with intent to rob; he was acquitted of a separate charge of aggravated assault by use of a firearm. He was charged with burglary in that he entered Curtis's home with intent to commit a theft and intent to commit the felony of armed robbery.

A person may be convicted of more than one crime for "a single act," or "the same act or transaction" if the statutory definition of the charged crimes shows that "each provision requires proof of a fact which the other does not." (Punctuation and footnote omitted.) *Drinkard v. Walker*, 281 Ga. 211, 215-216 (636 SE2d 530) (2006). See also OCGA § 16-1-7 ("same conduct"). But where the crimes charged are based on more than one separate act or transaction, no merger is required even for charges of the same crime: "[I]f one crime is complete before the other takes place, the two crimes do not merge." (Citation and punctuation omitted.) *John v. State*, 282 Ga. 792, 795 (6) (653 SE2d 435) (2007). With regard to the aggravated assault and armed robbery convictions, the evidence, when construed in favor of the verdict, shows that the victim was first threatened with a gun in an attempt to rob him, that, separately, he was pistol-whipped with a gun and struck with a hard object in an attempt to rob him, and that finally, he was shot in an attempt to rob him. Thus, the trial court was authorized to conclude that the physical beating and either incident of gun use were separate

completed crimes. See *Moore v. State*, 285 Ga. 157, 158-159 (3) (674 SE2d 315) (2009) (pulling a gun on victim near refrigerator and the separate shooting of same victim behind cash register only moments later were two separate, complete crimes); *Henderson v. State*, 285 Ga. 240, 244 (4) (675 SE2d 28) (2009) (pointing gun at victim outside duplex — aggravated assault — and robbing victim with gun moments later inside duplex — armed robbery — were two separate crimes). Accordingly, the trial court was authorized to convict Yates for aggravated assault for the physical beating and for armed robbery by use of a gun. Similarly, the burglary occurred when Yates walked into Curtis's home with intent to rob him. This event was separated by time from the aggravated assault and armed robbery. Thus, all three crimes were separate completed crimes. Accordingly, merger was not required.

4. Yates contends that error occurred when the prosecutor stated in open court that Johnny Isaac said that he would not testify at Yates's trial unless he were given a "deal," whereas at the hearing on the motion for new trial, it was shown that no such conversation occurred. Yates contends the court should not have heard the statement, which, he asserts, raised a question about Johnny's credibility, without requiring the prosecutor to be sworn in and without allowing the defense to cross-examine him. However, Yates made no objection to the statement or to the manner in which it was received, and thus any possible error was waived. *Peterson v. State*, 282 Ga. 286, 289 (3) (647 SE2d 592) (2007); *Smith v. State*, 277 Ga. 213, 218ʹ (11) (a) (586 SE2d 639) (2003).

5. Finally, Yates contends his trial counsel was ineffective. He alleges several instances of ineffective assistance concerning the handling of Johnny Isaac as a witness: (1) failing to interview him; (2) failing to subpoena him; (3) failing to move for a continuance to obtain his testimony; (4) agreeing to allow introduction of his statement in lieu of his testimony; (5) and waiving his *Crawford* and *Bruton* objections. He also contends counsel should have objected to the statement by the prosecutor about Isaac not wanting to testify without a deal and that counsel should have interviewed witness Lakesha Tolbridge.

To establish ineffective assistance, Yates must show both that counsel's performance was deficient and that there is a reasonable probability that the outcome of the trial would have been different without the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Williams v. State*, 277 Ga. 853, 857 (6) (596 SE2d 597) (2004). On this issue, "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Footnote omitted.) *Suggs v. State*, 272 Ga. 85, 88 (4) (526

SE2d 347) (2000).

Here, Yates cannot show there is a reasonable probability that he would have been acquitted if Johnny Isaac had testified. His claim of ineffective assistance regarding all aspects of Johnny Isaac's testimony must therefore fail. As the trial court held, taking Yates's own testimony, together with Isaac's, shows that Yates was guilty of the crimes as charged. Yates admits that he saw Burch and Johnny take out guns, say "let's do this," and head for Curtis's home. He knew the other two were up to no good, but he did not stay in the car or leave; instead he moved toward the victim's house and was already on the porch before he heard anyone call for help. He then entered the home, engaged with the victim, moved a gun away from the victim, helped his friends fight with the victim, and attempted to help them escape. The only evidence shows that Yates was in Curtis's home when Johnny started shooting at Curtis, when Curtis was pistol-whipped and hit in the head with a hard object, and when Curtis's money was taken. Although Johnny Isaac testified at the hearing on the motion for new trial that Yates came into the house after Burch got shot, that was before Curtis got shot. Yates chose to join his friends with knowledge of their intent rather than choosing to run away, call the police, or help the victim. See generally *In the Interest of K. B. T.*, 279 Ga. App. 350, 351 (631 SE2d 412) (2006) (defendant watched brutal beating up close and did not leave or call for help). He then drove the getaway car carrying Johnny Isaac, and he did not immediately notify the authorities.

Under these circumstances, Yates was guilty of the crimes of the other two men even if he did not initially intend to get involved. He was not merely present at the scene but, rather, he admits assisting his friends, fighting with the victim, keeping a gun from the victim, and helping his friends escape. Thus, Yates has admitted to aiding and abetting the crime. See OCGA § 16-2-20 (b) (3). Compare *Grant v. State*, 227 Ga. App. 243, 245 (488 SE2d 763) (1997) (no direct evidence that defendant was an accessory before co-defendant stole a truck).

For the same reason, Yates cannot show ineffective assistance regarding his attorney's failure to object to the statement by the prosecutor about Johnny Isaac not wanting to testify without a deal, which, Yates argues, impeached Johnny's credibility. Even if we assume that Johnny was telling the truth, the facts still show that Yates was guilty of the crimes charged. Finally, with regard to witness Tolbridge, Yates has not offered any proof of what her testimony would be, and therefore there is nothing for us to review.

*Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED JULY 6, 2009.

*Leonard M. Geldon*, for appellant.
*Louie C. Fraser, District Attorney, Robert B. Faircloth, Assistant District Attorney*, for appellee.