## A06A1110. CHATHAM v. THE STATE.
### (634 SE2d 856)

MIKELL, Judge.

A Coweta County jury convicted Randal Jeffery Chatham of two counts of aggravated stalking, simple battery, and of making harassing phone calls. Following the denial of his motion for new trial, Chatham appeals his conviction, arguing that the trial court erred when it denied his motion for directed verdict on the aggravated stalking charges. We affirm.

> Our standard of review for the denial of a motion for a directed verdict of acquittal is the same as our standard for reviewing the sufficiency of the evidence to support a conviction. We view the evidence in the light most favorable to the jury's verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1]

Chatham no longer enjoys a presumption of innocence.[2] Moreover, as an appellate court, we determine evidence sufficiency but do not weigh the evidence or determine witness credibility.[3]

Viewed most favorably to the verdict, the evidence adduced at trial showed that Chatham and the victim were divorced on December 16, 2004, after being married for 13 years. After several incidents during which Chatham verbally and physically abused the victim in the presence of their two minor children, the victim obtained a temporary protective order against him on March 23, 2004. On April 8, 2004, the court issued a permanent restraining order, effective for one year, which provided, in pertinent part:

> Respondent is hereby enjoined and restrained from doing, or attempting to do, or threatening to do, any act of injury, maltreating, molesting, following, harassing, harming, or abusing the Petitioner and/or the minor child/ren in any manner. Respondent is not to interfere with Petitioner's travel, transportation, or communication. Respondent shall not follow, place under surveillance, or contact the Petitioner at any place of the Petitioner for the purpose of harassing and intimidating the Petitioner.

---

[1] (Citation omitted.) *Maskivish v. State*, 276 Ga. App. 701, 702 (1) (624 SE2d 160) (2005).

[2] *Withers v. State*, 254 Ga. App. 833, 834 (1) (563 SE2d 912) (2002).

[3] Id.

A subsequent order was entered giving Chatham visitation with the children every other weekend and three phone calls three times a week at 8:00 p.m.

The victim recalled that on August 23, 2004, Chatham walked into Gold's Gym, and motioned to her to follow him outside; that he knew that she worked out regularly there; that he had been following her for several days; that they argued in the parking lot; that she pushed Chatham after he kept getting in her face; and that she told a trainer to call the police. The victim explained that a week earlier, Chatham had a visitation with their son and threatened not to return him. After returning the child, the victim and Chatham argued and he followed her down the highway and tried to run her off the road. The victim also testified that before the incident at the gym, Chatham would show up at her job, drive through her employer's parking lot, and follow her to various places. Therefore, when he showed up at the gym and beckoned her, she decided to go out to talk to him to confront him and tell him to stop following her.

According to the victim, on November 3, 2004, Chatham began calling her early in the morning and that she finally answered the phone at her office after he tried to reach her on her cell phone; that he told her that she needed to leave work and meet him somewhere; that he wanted to come to her job; that after she refused to meet him and hung up the phone, he called her back and asked her if she was going to church; and that Chatham became angry when she would not tell him her whereabouts and told her, "never f___ing mind. By the end of this day there's going to be two families without a man in it." The victim interpreted his comment as a threat against her co-worker, Scott Rupert, with whom Chatham thought she was having an affair, and against himself. The victim explained that before November 3, Chatham had shown up at a neighboring restaurant, where she, the children, another co-worker, and Rupert were having lunch, and tried to goad Rupert into going outside with him.

At the end of her workday on November 3, the victim walked outside and while talking to Randy Brown and Jerry Bass, both of whom were 911 operators and also worked for the store next door, she saw Chatham parked at the store across the street. She watched Chatham's truck as she walked to her car, and Chatham called her on her cell phone as he pulled into the parking lot where her car was parked. The victim threatened to call the police and dial 911 as she approached Chatham and told him to leave. As she raised her phone to her ear, Chatham, said "f_ck you" and slapped her, knocking the phone to the ground. Rupert, who had apparently also been at work that day, and Brown then grabbed Chatham and held him down on the ground until the police arrived. The portion of the 911 call that was recorded before Chatham slapped the victim was played for the

jury. The August 23 and November 3, 2004, incidents were the subject of the two counts of aggravated stalking charged in the indictment.

Pursuant to OCGA § 16-5-91 (a),

> [a] person commits the offense of aggravated stalking when such person, in violation of a ... temporary restraining order, temporary protective order, permanent restraining order, [or] permanent protective order, . . . follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

For purposes of the above statute,

> [t]he term "harassing and intimidating" means "a knowing and willful course of conduct directed at a specific person which causes emotional distress by placing such person in reasonable fear of death or bodily harm" to herself or an immediate family member and serves no legitimate purpose. OCGA § 16-5-90 (a). Overt threats of bodily harm are not required.[4]

Chatham argues that his motion for directed verdict should have been granted because the state did not prove that he acted for the purpose of harassing and intimidating the victim. His argument rests solely on attacking the victim's credibility, and he refers the Court to the varying accounts of the August and November incidents given by other witnesses. Essentially, Chatham is urging this court to weigh the evidence and assess the credibility of the witnesses, which this court does not do.[5]

The testimony of a single witness is sufficient to establish a fact, and in this case, the jury obviously chose to believe the victim's testimony, which it was authorized to do.[6] Chatham maintains that based on the other witnesses' testimony, he did not have the requisite intent. However, this argument fails because "the intention with which an act is done is peculiarly for the jury[,]"[7] and the jury obviously found the requisite intent. Accordingly, we find that the

---

[4] *Johnson v. State*, 264 Ga. App. 889, 891 (1) (592 SE2d 507) (2003), citing *Fly v. State*, 229 Ga. App. 374, 376 (1) (494 SE2d 95) (1997). See *Miller v. State*, 273 Ga. App. 171, 172-173 (1) (614 SE2d 796) (2005).

[5] See *Withers*, supra.

[6] *Scott v. State*, 254 Ga. App. 728, 730 (3) (563 SE2d 554) (2002).

[7] (Citation omitted.) *Phillips v. State*, 278 Ga. App. 198, 200 (1) (628 SE2d 631) (2006).

evidence was sufficient to authorize a rational trier of fact to find Chatham guilty of aggravated stalking beyond a reasonable doubt.[8]

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

DECIDED JULY 26, 2006.

*Shauna M. Hill, Jerry F. Pittman*, for appellant.

*Peter J. Skandalakis, District Attorney, Kevin T. McMurry, Assistant District Attorney*, for appellee.

---

[8] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).