## A08A2313. HOLLIS v. THE STATE.
### (672 SE2d 487)

MILLER, Chief Judge.

Following a jury trial, Randy Hollis was convicted of aggravated stalking (OCGA § 16-5-91), aggravated assault (OCGA § 16-5-21), burglary (OCGA § 16-7-1), kidnapping (OCGA § 16-5-40), and aggravated battery (OCGA § 16-5-24). He now appeals from the denial of his new trial motion, asserting that the trial court erred in: (1) allowing a witness to testify in violation of the rule of sequestration; (2) charging the jury on the crime of aggravated stalking; and (3) sentencing him as a recidivist. Hollis further claims that the evidence was insufficient to sustain his convictions. Discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict (*Drammeh v. State*, 285 Ga. App. 545, 546 (1) (646 SE2d 742) (2007)), the record shows that in mid-November 2004, Rhonda Clem obtained a Temporary Protective Order ("TPO") against Hollis, who was her ex-boyfriend and the father of her two youngest children. The TPO prohibited Hollis from having any contact with Clem or from coming within a certain distance of her. Clem sought the TPO after Hollis stalked her and threatened her with a gun. After the TPO was entered, however, Hollis followed Clem and repeatedly drove past her house.

On the evening of November 25, 2004, Hollis approached Clem at a local club and said "let's go home." Clem contacted an off-duty police officer working security at the club and told him she had a TPO against Hollis. Because Clem did not have a copy of the TPO with her, the officer could not arrest Hollis, but he did make Hollis leave the premises.

Clem returned to her home between 1:00 and 2:00 a.m. on the morning of November 26, 2004. After changing clothes, she fell asleep on the sofa in her den. She awoke some time later to find Hollis standing over her, holding a gun to her head. Although the doors to the house had been locked, Hollis had gained access by removing the back door from its hinges.

Hollis told Clem that if she screamed, he would kill Clem's oldest daughter, who was sleeping in the next room. Hollis then ordered Clem to leave the house and get in his truck. Hollis drove Clem first to a river, where he threatened to dump her body after killing her, and then to his hotel room, before returning her to her house several hours later. During this time, Hollis struck Clem at least twice,

hitting her once with his gun.

After Clem returned home, her oldest daughter contacted police. Clem filed a police report, and then went to stay at her cousin's house. Clem returned to her home early the next evening. Later that night, as Clem stood in her kitchen washing dishes, Hollis knocked on a kitchen window and asked Clem to come outside. Clem refused and, approximately 30 minutes later, Hollis shot her, firing his gun through the glass in Clem's back door. Police later determined that Hollis had fired six shots, with three of those shots hitting Clem. Clem's near-fatal wounds left her temporarily paralyzed on her right side, and she endured a lengthy and painful period of recovery.

Police interviewed Hollis after Clem identified him as her assailant. During that interview, Hollis admitted "picking Clem up" from her house early on the morning of November 26 and then driving her first to the river and then to his hotel room before taking her back home. Hollis claimed that this contact was initiated by Clem and was consensual. Hollis further admitted, however, that on the evening of November 27 he had taken his gun and gone to Clem's house. After Clem rebuffed his attempts to speak with her, Hollis shot her.

Hollis was subsequently indicted on two counts of aggravated stalking, two counts of aggravated assault,[1] and a single count each of burglary, kidnapping, rape, and aggravated battery. A jury convicted Hollis of all but the rape charge, and the trial court merged the aggravated battery count with one of the aggravated assault counts. Hollis then filed a motion for a new trial, which was denied. This appeal followed.

1. Hollis first claims that the trial court erred in allowing the investigating officer, Detective Eddie Jones, to be present during the trial prior to his testimony, in violation of the rule of sequestration. We disagree.

The rule of sequestration affords each party to a proceeding "the right to have the witnesses of the other party examined out of the hearing of each other." OCGA § 24-9-61. "The purpose of the rule of sequestration is to prevent a witness who has not testified from having his testimony affected by that of another witness." (Footnote omitted.) *Clements v. State*, 279 Ga. App. 773, 775 (3) (632 SE2d 702) (2006).

A trial court, however, "is vested with the discretion to make an exception to the sequestration rule for the chief investigating officer

---

[1] The second count of aggravated assault resulted from the fact that, at the time Hollis fired six shots into Clem's residence, Clem's 86-year-old grandmother was also present in the home. See OCGA § 16-5-21 (d).

and the discretion will not be reversed on appeal unless abused. [Cits.]" *Stafford v. State*, 288 Ga. App. 733, 734 (2) (655 SE2d 221) (2007). Citing *Carter v. State*, 271 Ga. App. 588 (610 SE2d 181) (2005), Hollis argues that an abuse of discretion occurs where the trial court allows an investigating officer to observe the trial prior to testifying, without requiring the State to make a "true showing" of its need for the detective's presence. This argument fails, however, because it is based on a misinterpretation of the law.

Although in *Carter* this Court questioned "the trial court's ready acceptance of the State's conclusory assertion" that the law enforcement officer at issue was needed in the courtroom (271 Ga. App. at 590 (2)), that opinion did not establish a rule requiring the State to present evidence showing the necessity of having the investigating officer present during the entire trial. Rather, as the Supreme Court of Georgia has acknowledged, *Carter* "applied the principle that when the prosecutor indicates that a witness is needed in the courtroom for the orderly presentation of evidence, there is no abuse of the trial court's discretion in permitting the witness to remain. [Cit.]" *Warner v. State*, 281 Ga. 763, 765 (2) (642 SE2d 821) (2007).

Here, the prosecuting attorney requested that Detective Jones be excepted from the rule of sequestration to permit him to assist her in presenting her case, because of Detective Jones's familiarity with the facts and the crime scene. In light of the prosecutor's request, we find that the trial court did not abuse its discretion in allowing Jones to remain in the courtroom during the presentation of the State's case. *Stafford*, supra, 288 Ga. App. at 735 (2).

2. Hollis next argues that the trial court erred in instructing the jury on the crime of aggravated stalking. The jury charge given by the trial court mirrored the language of the statute under which Hollis was charged, OCGA § 16-5-91 (a). That statute provides, in relevant part:

> A person commits the offense of aggravated stalking when such person, in violation of a . . . temporary protective order, . . . follows, places under surveillance, or contacts another person at or about a place or places without the consent of the other person for the purpose of harassing and intimidating the other person.

Hollis argues that the trial court also should have charged the jury on the statutory definition of "harassing and intimidating," found in OCGA § 16-5-90, which provides:

> For the purposes of this article, the term "harassing and intimidating" means a knowing and willful course of con-

duct directed at a specific person which causes emotional distress by placing such person in reasonable fear for such person's safety or the safety of a member of his or her immediate family, by establishing a pattern of harassing and intimidating behavior, and which serves no legitimate purpose.

OCGA § 16-5-90 (a) (1).

Hollis claims that without knowing this definition of "harassing and intimidating," the jury could not determine: (1) whether Hollis had the requisite criminal intent — i.e., whether the allegedly harassing and intimidating conduct was "knowing and willful"; and (2) whether Hollis' conduct was, in fact, harassing and intimidating. This argument is entirely without merit.

As a threshold matter, we note that Hollis points to no evidence showing that he requested a jury charge on the definition of "harassing and intimidating," statutory or otherwise. The general rule is that "where no written request for a jury charge has been filed, the failure to give that charge is not error." (Citation and punctuation omitted.) *Clay v. State*, 232 Ga. App. 656, 658 (2) (503 SE2d 560) (1998). While Hollis did reserve his objections to the jury charges given, he offers no argument or legal authority to support his implied assertion that such a reservation also applies to the trial court's "failure" to give a jury charge that was never requested.

Nor do we find that the trial court should have given a jury charge on the definition of "harassing and intimidating," sua sponte.

The rule is that when the charge embraces a section of the Code which contains technical words or expressions, the meaning of which is probably not understood by a person unlearned in the law, the court should so define them as to convey to the jury a correct idea of their meaning, but it is unnecessary for the court, even upon request, to explain words and expressions which are of ordinary understanding and self-explanatory.

(Citation and punctuation omitted.) *Baird v. State*, 201 Ga. App. 378, 378-379 (411 SE2d 332) (1991). "Applying this rule, the appellate courts of this state have declined to find error when the trial court failed to define such terms as 'reasonable doubt'; 'accident'; 'spirituous liquors'; 'possession'; and 'maliciously.' " (Citations omitted.) *McCallister v. Doe*, 181 Ga. App. 602, 604 (1) (353 SE2d 89) (1987). See also *Baird*, supra, 201 Ga. App. at 378-379 (no error where trial court failed to define "dangerous weapon"); *Anderson v. State*, 226 Ga. 35, 36 (2) (172 SE2d 424) (1970) ("assault"); *Ricks v. State*, 156

Ga. App. 647, 648 (3) (275 SE2d 730) (1980) ("offensive weapon"). Likewise, we find that the words "harassing and intimidating," as used in OCGA § 16-5-91, "are not words of art but rather are words of common understanding and meaning which require no definition themselves for understanding by the jury." *Baird*, supra, 201 Ga. App. at 378.

Finally, and most importantly, the aggravated stalking charge given by the trial court clearly required the jury to find the requisite criminal intent before convicting Hollis. That instruction informed the jury that, to find Hollis guilty of aggravated stalking, it had to find that he engaged in the alleged conduct "for the purpose of harassing and intimidating" Clem.

3. Nor do we find any merit in Hollis' assertion that the trial court's decision to sentence him as a recidivist constituted "cruel and unusual punishment" in violation of the Eighth Amendment.

The trial court sentenced Hollis as a recidivist after the State showed that he had been convicted of five separate felony offenses between January 1988 and November 1999.[2] Four of these convictions were for violations of OCGA § 40-5-58 (c) (1), which makes it a crime for "[a]ny person declared to be a habitual violator and whose driver's license has been revoked" to operate a motor vehicle "before the department has issued such person a driver's license or before the expiration of five years from such revocation. . . ."

On appeal, Hollis argues that these convictions should not be regarded as felony convictions under OCGA § 17-10-7, because they were based on conduct (driving on a suspended or revoked license) "that is a misdemeanor under Georgia law." We disagree.

The Georgia Code defines a felony as "a crime punishable by death, by imprisonment for life, or by imprisonment for more than 12 months." OCGA § 16-1-3 (5). A violation of OCGA § 40-5-58 (c) (1) is punishable by "a fine of not less than $750.00 or by imprisonment in the penitentiary for not less than one nor more than five years, or both." Such a violation, therefore, constitutes a felony, and the trial court did not err in sentencing Hollis as a recidivist. See *Ortiz v. State*, 266 Ga. 752, 753-754 (2) (470 SE2d 874) (1996) (OCGA § 17-10-7 does not constitute cruel and unusual punishment under the federal or state constitutions and does not violate an individual's due process or equal protection rights.).

4. We now turn to Hollis' claim that the evidence was insufficient to sustain his convictions on Counts 1 (aggravated stalking on

---

[2] Hollis was sentenced under OCGA § 17-10-7 (c), which provides that a person convicted of a fourth or subsequent felony must "serve the maximum time provided in the sentence of the judge based upon such conviction and shall not be eligible for parole until the maximum sentence has been served."

November 26, 2004), 2 (burglary), 3 (kidnapping), 7 (aggravated assault of Clem's grandmother), and 8 (aggravated battery). In evaluating these claims

> we do not weigh the evidence, judge the credibility of witnesses or resolve conflicts in trial testimony. . . . Instead, we determine if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. As long as there is some evidence, even though contradicted, to support each necessary element of the State's case, the jury's verdict will be upheld.

(Footnote omitted.) *Benton v. State*, 256 Ga. App. 620, 621 (1) (568 SE2d 770) (2002).

(a) Hollis asserts that the State failed to prove that his conduct in approaching Clem at the club on November 26 constituted aggravated stalking, because it did not show that Clem felt either harassed or intimidated by that conduct. To convict Hollis on this count, however, the State was only required to prove that Hollis' actions were done for the purpose of harassing or intimidating Clem.

> [T]he intention with which an act is done is peculiarly for the jury, and the jury [below] obviously found [that Hollis had] the requisite intent. Accordingly, we find that the evidence was sufficient to authorize a rational trier of fact to find [Hollis] guilty of aggravated stalking beyond a reasonable doubt.

(Punctuation and footnotes omitted.) *Chatham v. State*, 280 Ga. App. 695, 697-698 (634 SE2d 856) (2006).

(b) Hollis claims that his convictions for burglary and kidnapping must be reversed because the only evidence of those crimes was the uncorroborated testimony of Clem. However, Clem's testimony, standing alone, was sufficient to prove Hollis' guilt. See OCGA § 24-4-8 ("The testimony of a single witness is generally sufficient to establish a fact."); *Culver v. State*, 290 Ga. App. 321, 322 (659 SE2d 390) (2008). "[I]n this case, the jury obviously chose to believe the victim's testimony, which it was authorized to do." (Footnote omitted.) *Chatham*, supra, 280 Ga. App. at 697.

(c) Hollis also challenges his conviction for aggravated assault as to Clem's grandmother, Mattie Bridges. A person commits an aggravated assault when he "[c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury" (OCGA § 16-5-20 (a) (2)), while using a deadly weapon (OCGA § 16-5-21). Hollis asserts that the State failed to prove either that Ms.

Bridges was in Clem's home at the time of the shooting or that she was "in reasonable apprehension of immediately receiving a violent injury." Neither of these assertions is supported by the record.

Clem testified that, at the time of the shooting, her grandmother and she were the only two people in the house.[3] Given Ms. Bridges' presence in the residence, there was evidence from which the jury could infer that she reasonably feared suffering a violent injury during the shooting. That evidence included the fact that the shots were loud enough to be heard in a neighboring home and that at least four of the six shots went through the kitchen wall and into the living room and bedroom areas of the house. See *Brown v. State*, 200 Ga. App. 537 (1) (408 SE2d 836) (1991) (prosecution not required to prove that the victim thought the defendant was shooting at her); *Dukes v. State*, 264 Ga. App. 820, 823-824 (4) (592 SE2d 473) (2003).

(d) The trial court merged Hollis' conviction for aggravated battery of Clem (Count 8) with his conviction for aggravated assault of Clem (Count 5). Therefore, we need not address Hollis' claim that the evidence failed to support his conviction for aggravated battery.

For the reasons set forth above, we affirm the trial court's denial of Hollis' motion for a new trial.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JANUARY 13, 2009.

*Agis R. Bray III*, for appellant.
*Kenneth B. Hodges III, District Attorney, Victoria Darrisaw, Assistant District Attorney*, for appellee.

[3] Although Hollis' brief points to the State's failure to call Ms. Bridges as a witness, we note that, by the time of trial, Ms. Bridges was deceased.