## A09A0970. VAUGHN v. THE STATE.
### (686 SE2d 847)

ADAMS, Judge.

Terry Eugene Vaughn was convicted by a jury of aggravated stalking, aggravated assault (three counts) and making terroristic threats. He appeals following the denial of his amended motion for new trial. We affirm.

As acknowledged in his brief on appeal, Vaughn and his wife Kara, one of the victims in this case, had a "turbulent" relationship. Kara testified that Vaughn began hitting her after she had their second child and that she left him on several occasions because of the physical violence but would come back to him when he told her he had changed. The police were called on several occasions to their various residences because of these altercations, and Vaughn was arrested after he tried to choke Kara in September 2006. When Vaughn was bonded out after that incident, a special condition was imposed on his bond that he have no "violent contact" with Kara.

Because of Vaughn's continued physical abuse, which sometimes occurred in front of their children and of which other family members were aware, in December 2006 Vaughn's sister Martha convinced Kara that she needed to go to a shelter for her own safety. Kara testified that she could not stay at the shelter during the day, so on New Year's Eve she decided to visit the home where Martha

---

lived with her husband, Anthony Sims, and her son, Mervin Vaughn. Kara testified that she did not think Vaughn would be there because his sister had told her that he was not staying there anymore. However, when she arrived, Vaughn, as well as other relatives and friends, was there for a party. Most if not all of those in attendance were drinking.

Kara testified that Vaughn started to threaten her, telling her that he was going to kill her and that she "won't be able to see next year." Sims testified that Vaughn was not acting like himself and that he became concerned for Kara's safety, so he told her to take Martha's car and leave; Kara also testified that Sims and Martha both told her she needed to leave. She and the children went out to the car which was parked at the curb, but Vaughn, who had been in the garage with some of the other men, came after her. Sims grabbed him to try and stop him, telling Vaughn to just let her go. Vaughn told him he had a knife and started "tapping" Sims with it. Vaughn made it to the car and tried to get in. Mervin, who had heard a woman screaming, came out of the house and tried to get Vaughn out of the car and away from Kara. During the struggle, Sims realized that Kara did not have the keys to the car, so he let go of Vaughn for a minute to get the keys out of his pocket and give them to Kara. He then continued to try and calm Vaughn down, and he thought it was at this point that Vaughn cut him with his knife. Mervin testified that he continued to struggle with Vaughn and that at some point he was also cut, although he did not realize it until he started to become weak from loss of blood. Kara testified that as she was trying to leave, Vaughn followed her to the car, that someone told her he had a knife and that he tried to get in the car with her, calling her names, ordering her to let him in and telling her he was going to "f___ her up."

Vaughn testified and denied that he threatened Kara, although he admitted that he followed her out to the car and remarked to Sims that "I'm just going to see what this bitch — what's she talking about." Vaughn testified that as he got closer to Kara, Sims wrapped his arms around his waist, and then he looked up and saw Mervin approach with a shovel. Another guest took the shovel from Mervin and Sims started nudging Vaughn toward the front door. According to Vaughn, Mervin picked up a stick and hit him a few times and then started "drilling" him with his fists. Vaughn testified that he was sort of knocked out for a minute and when he came back to, he saw Mervin push his mother aside and then start hitting him again with his fists. Vaughn testified that he became "discombobulated" but that he thought he took a knife out of his pocket and cut Mervin with the knife. Vaughn testified that Sims told him to leave and that Harry Benton, a family friend, took him to another location. Vaughn

was subsequently arrested, and a pocketknife was recovered from his right front pocket.

1. Vaughn first challenges the sufficiency of the evidence to support his conviction for aggravated stalking. As to this offense, Vaughn was charged with having "violent contact with Kara Vaughn, . . . without the consent of Kara Vaughn, for the purpose of harassing and intimidating said victim, in violation of a special condition of bond, case number 06-133554, dated April 9, 2006."

(a) Vaughn first argues that the evidence was insufficient to show that his contact with Kara was without her consent because she "instigated" the contact by coming to the residence where he was visiting relatives and then not leaving immediately upon realizing that he was, albeit unexpectedly, present.[1] But this argument is unavailing. The special condition of bond that Vaughn was charged with violating specified that he was to have no "violent" contact with Kara, but did not prohibit all contact between the two. Since there is no evidence in this case that merely by being in his presence Kara consented to having violent contact with Vaughn, we find this contention to be without merit.

Vaughn further asserts, however, that the evidence was also insufficient to show that he had violent contact with Kara since there was no evidence that he physically touched her. However, we find the evidence that Vaughn made verbal threats to Kara, pursued her to her car with a knife exposed, and fought with his other relatives in an attempt to get in the car with her or prevent her from leaving was sufficient to establish the necessary violent contact.

(b) Vaughn next contends there was a fatal variance between the indictment and the proof at trial because he was accused of violating a special condition of bond dated April 9, 2006 while the special condition of bond introduced at trial was dated September 23, 2006.

> However, (n)ot all differences between an indictment and proof constitute fatal variances. An accused must be definitely informed of the charges against him so that he may present a defense, and he must be protected against a second prosecution for the same offense. If a variance does not present these dangers, it is not fatal.

(Citation and punctuation omitted.) *Fields v. State*, 281 Ga. App. 733, 735 (1) (a) (637 SE2d 136) (2006), overturned on other grounds, *Schofield v. Holsey*, 281 Ga. 809 (642 SE2d 56) (2007).

In this case, there is no contention that there was more than one bond which prohibited Vaughn from having violent contact with the

---

[1] Vaughn concedes in his brief that Kara did not expect him to be there.

victim. And although the dates differ, the case number referred to in the indictment and that contained on the special condition are the same. Moreover, Vaughn's signature appears on the special condition, establishing his awareness of the imposition of the condition that he have no violent contact with Kara. Further, the indictment clearly put Vaughn on notice that the aggravated stalking charge was based on a violation of the special condition. "Thus, there is no basis whatsoever to believe that [Vaughn] was somehow misled or surprised as to the incident referred to in the indictment, that his ability to prepare for trial had been impeded, or that he could be tried again for the same offense." *Holmes v. State*, 291 Ga. App. 196, 199 (2) (661 SE2d 603) (2008). Consequently, the discrepancy in dates did not constitute a fatal variance and this enumeration affords no basis for reversal. Id.; *Fields v. State*, 281 Ga. App. at 735-736 (1) (a).

2. Vaughn next contends the trial court erred by failing to define violent contact in its charge to the jury. This contention is without merit for several reasons. First, it does not appear that Vaughn requested that this term be defined for the jury. "The general rule is that where no written request for a jury charge has been filed, the failure to give that charge is not error." (Citation and punctuation omitted.) *Hollis v. State*, 295 Ga. App. 529, 532 (2) (672 SE2d 487) (2009).

Moreover, our review of the transcript shows that Vaughn did not object to the trial court's failure to define violent contact.

> The trial of this case occurred in September 2007. Thus, this issue is controlled by the 2007 amendment to OCGA § 17-8-58, effective July 1, 2007. Under subsection (a) of the Code section, a criminal defendant is required to "inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate." Subsection (b) precludes appellate review where there is a "(f)ailure to object in accordance with subsection (a)." As [Vaughn] did not specifically object to the [failure of the trial court to instruct the jury on the definition of violent contact] at the conclusion of the jury charge, he has waived his right to urge error on appeal.

*Metz v. State*, 284 Ga. 614, 619-620 (5) (669 SE2d 121) (2008).

3. Vaughn next contends that the evidence was insufficient to support his conviction for making terroristic threats because Kara's testimony that he threatened to kill her was uncorroborated. See OCGA § 16-11-37 (a), which provides in relevant part, "No person shall be convicted under this subsection on the uncorroborated testimony of the party to whom the threat is communicated."

However, to show the necessary corroboration, it is not necessary for someone else to hear the threat or to testify about its contents. Rather,

> the quantum of corroboration need not in itself be sufficient to convict, but need only be that amount of independent evidence which tends to prove that the incident occurred as alleged. Indeed, slight circumstances may be sufficient for corroboration and the question of corroboration is one solely for the (trier of fact). If there is any evidence of corroboration, this court will not go behind the . . . verdict and pass on its probative value. Such corroborating circumstances may include defendant's aggressive and hostile conduct leading up to and during the threat.

(Citations and punctuation omitted.) *Hobby v. State*, 298 Ga. App. 52 (1) (679 SE2d 72) (2009).

In this case, Vaughn's behavior that day caused other family members to become concerned for Kara's safety and to urge her to leave. Moreover, testimony was also presented that he followed her as she was attempting to leave, that he had a knife, and that he got into a violent struggle with two of his relatives who tried to keep him away from Kara so that she could get away from him. This evidence was sufficient to provide the necessary corroboration.

4. Vaughn next contends that the aggravated stalking charge, the aggravated assault charge pertaining to Kara and the terroristic threats charge should merge because they "essentially charge the same offense" against the same victim.

Georgia courts apply the "required evidence" test to this issue. *Drinkard v. Walker*, 281 Ga. 211, 214-215 (636 SE2d 530) (2006); *Williams v. State*, 293 Ga. App. 193, 195 (1) (666 SE2d 703) (2008). "Under the required evidence test, . . . the test to be applied to determine whether there are two offenses or only one, is whether each [statutory] provision requires proof of a fact which the other does not." (Citation and punctuation omitted.) *Drinkard v. Walker*, 281 Ga. at 215.

Applying this test, we find no merger occurred here. To prove the crime of aggravated stalking as alleged in the indictment, the State had to prove that Vaughn had violent contact with Kara, for the purpose of harassing and intimidating her, in violation of the special bond condition. To establish the crime of aggravated assault as alleged in the indictment, the State had to show that Vaughn made an assault upon Kara with a knife, which when used offensively, was likely to result in serious bodily injury. Lastly, to prove the crime of terroristic threats, as charged under the indictment, the

State had to prove that Vaughn threatened to kill Kara, with the purpose of terrorizing her. Thus, the crime of aggravated stalking required proof of the special bond condition and that his conduct violated that condition, while the crime of aggravated assault required the State to prove an assault with a knife against Kara, and the crime of terroristic threats required proof that Vaughn threatened to kill her. Thus, all three crimes required the State to prove at least one fact different from the others and no merger occurred. *Rouse v. State*, 295 Ga. App. 61, 62 (1) (670 SE2d 869) (2008); *Williams v. State*, 293 Ga. App. at 195 (1).

5. Vaughn challenges the effectiveness of his trial counsel.

> To prevail on a claim of ineffective assistance of counsel, a defendant must show that counsel's performance was deficient and that the deficient performance so prejudiced the defendant that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Terry v. State*, 284 Ga. 119 (663 SE2d 704) (2008), citing *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga. 505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, " '(w)e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' (Cit.)" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Hudson v. State*, 284 Ga. 595, 597 (5) (669 SE2d 94) (2008).

(a) Vaughn first contends his counsel rendered deficient performance by failing "to notice, exploit, or preserve as an issue the 'fatal variance' in the date of the bond condition underlying count 1." However, because we have determined that no fatal variance existed, this contention also fails. "Failure to make a meritless or futile objection or motion cannot be evidence of ineffective assistance." (Punctuation and footnote omitted.) *Gibson v. State*, 291 Ga. App. 183, 188 (3) (661 SE2d 850) (2008).

(b) Lastly, Vaughn contends his trial counsel was ineffective because she did not conduct an adequate investigation. Specifically he contends she should have located his brother Randy Vaughn who was also present at the time of the incident and who would have given testimony favorable to his defense.

As to this issue, trial counsel testified at the motion for new trial hearing that Vaughn suggested she contact Randy and other family

members who were present at the gathering that day, but that the only lead he could give her on Randy's whereabouts was that she should talk to Vaughn's mother to find out how to locate him. Counsel further testified that she had her investigator make the suggested contacts but most of the family members contacted either could not provide any information about the events of that day or they provided information which was not favorable to the defense; indeed, as the trial court noted, the crimes were "intra family and . . . many of the witnesses who testified for the State were in fact [Vaughn's] family members." Trial counsel testified that Vaughn's mother was uncooperative and that one of his sisters said she would give the investigator's name and contact information to Randy, but she would not provide Randy's contact information to the investigator and Randy did not call. Based on the evidence presented, the trial court found that counsel's pre-trial investigation was reasonable, and therefore, her performance was not deficient. We agree.

> In light of the limited amount of information about [Randy] that was available to trial counsel prior to trial, the fact that counsel failed to locate [Randy] despite her good faith efforts to do so did not amount to deficient performance. [Cit.] Because evidence supports the conclusion that trial counsel was not ineffective, [Vaughn's] claim to the contrary is without merit.

*Hudson v. State*, 284 Ga. at 598-599 (5) (a).
   *Judgment affirmed. Blackburn, P. J., and Doyle, J., concur.*

DECIDED NOVEMBER 16, 2009.

   *James C. Bonner, Jr.*, for appellant.
   *Gwendolyn Keyes Fleming, District Attorney, Daniel J. Quinn, Assistant District Attorney*, for appellee.