## A10A1374. FLETCHER v. THE STATE.
### (704 SE2d 222)

SMITH, Presiding Judge.

A jury found Brushawn Perry Fletcher guilty on two counts of homicide by vehicle, one count of DUI less safe, and one count of driving without a license.[1] Following the denial of his motion in arrest of judgment and his amended motion for new trial, Fletcher appeals, citing several claims of error. Having reviewed these claims, we find they are without merit and affirm.

Construed in favor of the verdict, the record reveals that police officers responded to the scene of a single-car accident around 4:00 a.m. The 911 operator had received a call from Fletcher, the driver of the vehicle, stating that he needed help. When the operator asked Fletcher if someone was there with him who could also help, Fletcher replied "No, we're drunk. We're f***ed up." When officers arrived, they observed Fletcher sitting beside the driver's door and observed the deceased victim inside the vehicle. Officers also observed the strong odor of alcohol coming from the vehicle and believed that Fletcher might have been under the influence of alcohol.

Fletcher was transported to a hospital for treatment of the injuries he received. When Fletcher arrived, a deputy, instructed to follow the ambulance to the hospital, noticed the smell of alcohol on

[25] See, e.g., *Waters v. State*, 280 Ga. App. 566, 567 (634 SE2d 508) (2006); *Bryson v. State*, 293 Ga. App. 392, 395 (2) (667 SE2d 170) (2008).

[1] The jury acquitted Fletcher on a third count of homicide by vehicle and one count of reckless driving. A count of theft by receiving was nolle prossed, and the trial court granted a demurrer to a DUI per se charge.

Fletcher's person. He also noticed that Fletcher's pupils were dilated, which he considered unusual since he and Fletcher were in a well-lit room. Based on his observations, the deputy believed that Fletcher had been driving under the influence of alcohol to the extent he was a less-safe driver. The deputy then read Fletcher the implied consent warning. Fletcher consented to a test of his blood, which revealed that he had a blood alcohol concentration of 0.142.

An autopsy was performed on the victim, and it was determined that he died of blunt force trauma to the head as a result of the accident. An officer trained in accident reconstruction opined that Fletcher was driving in excess of 73 miles per hour and that the vehicle left the roadway, hit a concrete culvert, became airborne, landed on top of a chain link fence, "flipped over and landed on its roof and then slid. And the car rolled over one more . . . time[,] . . . and then the vehicle finally slid to a stop." The investigation into the crash revealed that Fletcher and the victim had been at a residence about two miles from the crash scene.

1. Fletcher argues that the trial court erred in refusing to allow the jury to hear an audio recording of a conversation between police officers and Fletcher made at the hospital several hours after the accident. But the record reveals that Fletcher made no objection to the court's ruling on this issue. He has therefore waived this claim of error. See *Burrowes v. State*, 296 Ga. App. 629, 634 (5) (675 SE2d 518) (2009).

2. (a) Fletcher argues that the trial court erred in excluding evidence that the victim's failure to wear a seat belt was an intervening cause of his death. This court has previously held:

> So long as the defendant's negligence proximately caused the death of another, the crime has been committed, even if there are other factors which also are proximate causes of the death. As opposed to the civil context, in which compensating deserving victims is the aim, in the criminal context it simply is not relevant that the victim was negligent, unless the defendant's conduct did not substantially contribute to the cause of death.
>
> . . . Negligence on the part of the deceased has no bearing upon either responsibility or imputability in the determination of guilt or innocence if it was a substantial factor thereof, an act which is a direct cause of a socially harmful occurrence is always a proximate cause. Inasmuch as defendant's conduct was a "substantial factor" in causing the victim's death, it was a proximate cause of the victim's death.

(Citations and punctuation omitted.) *Whitener v. State*, 201 Ga. App. 309, 311-312 (3) (410 SE2d 796) (1991).

"[T]he admission of such evidence is a matter resting within the sound discretion of the trial court, [and] we will not disturb the trial court's ruling absent evidence of abuse." (Citation and footnote omitted.) *Moore v. State*, 258 Ga. App. 293, 295 (2) (574 SE2d 372) (2002). Because Fletcher's conduct was a substantial factor in the victim's death, we find no abuse of the trial court's discretion in excluding the expert testimony concerning seat belt use.

(b) Fletcher also complains that in closing arguments, the prosecutor was "allowed to mislead the jury by lecturing them that it was impossible for anyone to tell them that the failure to wear a seatbelt resulted in a fatality in this case." But Fletcher failed to object to the prosecutor's closing argument and has therefore waived this issue. *Sharp v. State*, 286 Ga. 799, 802 (2) (692 SE2d 325) (2010).

3. Fletcher contends in two enumerations that the trial court erred in failing to give his requests to charge "No. 28" and "No. 29." But Fletcher offers no argument in support of this claim, does not state the specific jury charges he requested, and provides no citation to the record for his requests or the trial court's refusal to give them. He states only that he "incorporate[s] by reference all arguments set forth" in other parts of his brief. These enumerations are therefore deemed abandoned. See *Sapeu v. State*, 222 Ga. App. 509, 513-514 (10) (474 SE2d 703) (1996); Court of Appeals Rule 25 (c) (2) (i).

4. Fletcher argues that because the officer failed to properly read the implied consent law, his conviction for vehicular homicide must be reversed. He complains that the officer's testimony summarizing the notice shows that "he did not limit the operation of the implied consent law to a 'Georgia driver's license or privilege to drive on the highways of this state' " and that he did not mention "the right to an independent test at the Appellant's expense."

The officer testified that he read Fletcher the implied consent warning for suspects 21 years of age or over, and he had the implied consent card he read from with him at trial. Following this testimony, the trial court allowed the State to admit the card as State's Exhibit 68. The officer stated further that he read the card verbatim to Fletcher, and he then summarized the language of the notice for the jury. Under these circumstances we see no error. See *Cullingham v. State*, 242 Ga. App. 499, 500 (3) (529 SE2d 199) (2000) (where officer testified he read appellant complete implied consent notice for suspects over 21 twice and then recited a portion at trial, defendant was properly informed of his rights). "This testimony and the specifying of a portion of the warning are sufficient to prove compliance with the implied consent notice requirements." (Citations and footnote omitted.) Id.

5. Fletcher argues that the evidence is insufficient to sustain his conviction for DUI less safe because there was "scant objective evidence of intoxication other than the blood test result," and "[n]o field sobriety tests were performed" due to his injuries. The evidence here showed that (1) Fletcher lost control of the vehicle he was driving and left the roadway, (2) Fletcher told a 911 operator after the accident that he was intoxicated, (3) there was an odor of alcohol inside the vehicle, (4) there was an odor of alcohol on Fletcher's person, and (5) Fletcher's eyes were dilated in a well-lit room. An officer testified that he believed Fletcher was under the influence of alcohol to the extent he was less safe. Although the officer did not conduct field sobriety tests due to Fletcher's injuries, the evidence was sufficient to sustain Fletcher's DUI less safe conviction under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See *Sistrunk v. State*, 287 Ga. App. 39, 39-40 (651 SE2d 350) (2007).

6. Fletcher contends that the jury's acquittal on a charge of reckless driving excludes his conviction for homicide by vehicle based on reckless driving as the predicate offense. As Fletcher acknowledges, the inconsistent verdict rule was abolished in Georgia in *Milam v. State*, 255 Ga. 560, 562 (2) (341 SE2d 216) (1986). A defendant therefore "cannot attack as inconsistent a jury verdict of guilty on one count and not guilty on a different count." (Citations omitted.) *Coleman v. State*, 286 Ga. 291, 296 (4) (687 SE2d 427) (2009).

> The reason therefor is that as an appellate court, we cannot know and should not speculate why a jury acquitted on the predicate offense and convicted on the compound offense. The reason could be an error by the jury in its consideration or it could be mistake, compromise, or lenity. Nonetheless, as a matter of prudence, the conviction on the compound offense should be upheld so long as the evidence will support it.

(Citations, punctuation and footnotes omitted.) *Amis v. State*, 277 Ga. App. 223, 225 (1) (626 SE2d 192) (2006).

Fletcher argues, however, that "[a] number of Georgia cases have held that verdicts are mutually exclusive when a guilty verdict on one count logically excludes a finding of guilt on another." But the present case is inapposite to those decisions because they involve mutually exclusive *guilty* verdicts. See *Jackson v. State*, 276 Ga. 408, 409-413 (2) (577 SE2d 570) (2003); *Dumas v. State*, 266 Ga. 797, 798-800 (2) (471 SE2d 508) (1996). And as held in *Dumas*, "[t]he general rule dispensing with the necessity for consistency as between

acquittals and guilty verdicts under a multi-count indictment or information is not ordinarily applied where the jury returns multiple convictions as to crimes which are mutually exclusive of each other." (Citation and footnote omitted.) Id. at 799 (2); see also *Stephens v. State*, 279 Ga. 43, 45 (3) (609 SE2d 344) (2005). The jury's guilty verdict on one count and acquittal on another here falls under the general rule and cannot be attacked as inconsistent. *Coleman*, supra. This claim of error is therefore without merit.

7. Fletcher argues that he received ineffective assistance of counsel. To prevail on an ineffective assistance claim, Fletcher must establish pursuant to *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984),

> that counsel's performance was deficient and that the deficient performance was prejudicial to his defense. . . . In reviewing a trial court's determination regarding a claim of ineffective assistance of counsel, this court upholds the trial court's factual findings unless they are clearly erroneous.

(Citations and footnotes omitted.) *Bruce v. State*, 268 Ga. App. 677, 679 (603 SE2d 33) (2004). "If an appellant fails to meet his or her burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong." (Citations and punctuation omitted.) *Vaughn v. State*, 301 Ga. App. 55, 60 (5) (686 SE2d 847) (2009).

(a) Fletcher contends that trial counsel was ineffective in failing to object to arguments made by the prosecutor during closing arguments. We have considered each of the complained-of statements, reviewed the trial transcript and the transcript of the hearing on the motion for new trial, and conclude that Fletcher has failed to show either that trial counsel performed deficiently in failing to object or that the outcome of the trial would have been different had counsel objected under the standard of *Strickland*, supra.

(b) Fletcher also argues that trial counsel was ineffective for failing to question the phlebotomist who drew his blood about the fact that she did not invert the blood tubes and in failing to introduce evidence regarding the impact of this omission on the blood test results. But the phlebotomist did not testify that she failed to invert the tubes. In response to a general question about overall procedure not necessarily applicable in this case, she stated only that "certain tubes, you have to sit there and invert them to make sure the chemicals mix in them . . . . [I]f you're drawing an EDTA tube, once you draw the blood, you need to invert that." She had already testified that she followed the proper procedure for drawing blood. The forensic toxicologist testified that she tested the tube containing

Fletcher's blood and that it was suitable for testing and had no clots, indicating that the chemicals were working functionally in the tube. Because there was no evidence that the phlebotomist failed to invert the tubes, we cannot say that trial counsel performed deficiently in failing to question the phlebotomist on this issue or in failing to introduce evidence regarding the impact on a blood test from tubes not inverted. And in any case, Fletcher has failed to show that the outcome of the trial would have been different had counsel done so. See *Strickland*, supra.

*Judgment affirmed. Mikell and Adams, JJ., concur.*

DECIDED NOVEMBER 24, 2010 — 

*Head, Thomas, Webb & Willis, William C. Head, Allen M. Trapp, Jr.*, for appellant.

*Penny A. Penn, District Attorney, Sandra A. Partridge, Assistant District Attorney*, for appellee.